IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY W.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

No. 19-1078-JWL

**MEMORANDUM AND ORDER**

   Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of the treating source medical opinion, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Background

Plaintiff filed an application for DIB on July 21, 2015. (R. 13, 190-91). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously accorded greater weight to the medical opinions of the state agency consultant physicians than to the opinion of Plaintiff's examining physician, Dr. Niss.[3] (Pl. Br. 13).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

---

[3] While Plaintiff calls Dr. Niss an examining physician, the ALJ found him to be a treating source. (R. 21-22). The record supports the ALJ's finding (Ex. B16F) and the court will address and evaluate Dr. Niss's opinion as a treating source opinion.

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Discussion

Plaintiff argues the ALJ discounted Dr. Niss's opinion because his treatment records do not describe functional limitations consistent with the limitations he opined, as exemplified by the inconsistency between his opinion Plaintiff was limited to standing one hour at a time with breaks every thirty minutes and his "treatment notes documenting range of motion, strength, and tone generally within functional limits." (Pl. Br. 14)

4

(citing R. 22). She argues the perceived inconsistencies do not exist and the ALJ's analysis reflects a misunderstanding of fibromyalgia. (Pl. Br. 14-15). She argues the ALJ's finding Dr. Niss's treatment notes document range of motion, strength, and tone <u>generally within functional limits,</u> is vague and unclear. <u>Id.</u> at 15. Plaintiff then argues that the ALJ's evaluation misunderstands the nature of fibromyalgia. <u>Id.</u> at 15-18 (citing numerous binding and nonbinding Court of Appeals and District Court opinions in fibromyalgia cases). Finally, Plaintiff explains why in her view it was error to accord greater weight to the opinions of the state agency physicians than to Dr. Niss's treating source opinion.

The Commissioner argues the ALJ's rationale for discounting Dr. Niss's treating source opinion was adequate. (Comm'r Br. 4). He argued,

> The ALJ recognized Dr. Niss as a treating source, but concluded that the treatment records did not reflect functional limitations supporting his opinion (Tr. 22). More specifically, the ALJ noted that Plaintiff's range of motion, strength, and muscle tone were generally found to be within functional limits, which seemed inconsistent with an alleged inability to stand for more than one hour at a time and with the need for breaks every 30 minutes.

<u>Id.</u> at 5 (citing R. 22).

### A. **Standard for Evaluating a Treating Source Opinion**

For claims filed before March 17, 2017, a treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Watkins v. Barnhart,</u> 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2). When a treating

5

physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

6

### B. The ALJ's Evaluation of Dr. Niss's Opinion

The ALJ provided this evaluation of Dr. Niss's opinion of Plaintiff's physical capabilities.

> In his statement, Dr. Niss opined that the claimant could rarely lift 20 pounds; stand for 4 hours in an 8-hour day for 1 hour at a time; and sit 4 hours in an 8-hour day for 2 hours at a time. He opined the claimant required the option to shift positions at will; would need to break for 15 to 30 minutes every 30 to 45 minutes. The claimant would be off task 25 percent of the workday and would likely miss more than four days of work per month (Exhibit B14F).
>
> If a treating source's medical opinion is well supported and consistent with the evidence in the case record, it must be given controlling weight (20 CFR 404.1527 and SSR 96-2p). Overall, the opinion of Dr. Niss is afforded little weight.
>
> Treatment records from Dr. Niss do not describe functional limitations that would support his recommended restrictions. While Dr. Ali [sic] opined that the claimant could stand for only an hour at a time and would need breaks every 30 minutes, such limitation is inconsistent with treatment records consistently documenting that the claimant's range of motion, strength, and tone were generally within functional limits (Exhibit B16F). For these reasons, the undersigned finds the opinion of Dr. Niss due to receive little weight.

(R. 21-22).

### C. Analysis

Plaintiff has demonstrated no error in the ALJ's evaluation of her fibromyalgia. The ALJ recognized that Social Security Ruling (SSR) 12-2p controlled his evaluation of fibromyalgia and he considered the evidence relating to fibromyalgia throughout his decision. Although Plaintiff cites numerous court cases wherein fibromyalgia was an impairment, and in many of which the ALJ erred in his evaluation of fibromyalgia, most of the cases cited predate SSR 12-2p and do not reflect the SSA's most recent guidance to

7

ALJs regarding the evaluation of that impairment. Moreover, Plaintiff does not point to an issue in this case where the ALJ failed properly to apply that SSR, or where he erred in his consideration.

Nevertheless, the court finds error otherwise in the ALJ's evaluation of Dr. Niss's opinion. As Plaintiff's Brief suggests, the ALJ found Dr. Niss's treatment records consistently documented that Plaintiff's range of motion, strength, and tone were generally within functional limits and were therefore inconsistent with his opinion that Plaintiff can stand for only an hour at a time and would need breaks every 30 minutes. The court finds at least three evidentiary problems which preclude this finding.

First, the court's review of the evidence cited by the ALJ in support of this finding (Ex. B16F) does not reveal a consistent documentation of Plaintiff's range of motion, strength, and tone. That exhibit consists of 78 pages of treatment notes from Salina Family Health Care where Dr. Niss and others treated Plaintiff. (R. 656-733). The court's review of those treatment notes reveals only one note referencing these issues. (R. 659). This note relates to a physical examination on November 13, 2017 in which it is recorded "Motor Strength and Tone: Normal and normal tone. Extremities … reduced ROM (reduced extension and flexion 2/2 pain)." Id. (bold omitted). Thus, in the record cited there is <u>one</u> exam referring to the issues relied upon by the ALJ, and although it refers to strength and tone as normal, it relates range of motion as reduced. This cannot be characterized as "consistently documenting." Second, as Plaintiff argues, the decision says these findings were "generally within normal functional limits," but does not explain what "normal functional limits" are. Perhaps the ALJ simply means they were

8

characterized as "normal" on the exam, but the ALJ related them to <u>functional</u> limits and earlier in the same paragraph tended to equate functional limitations with functional capacity limitations. Thus, the court would be required to speculate in order to find "normal functional limits" merely means characterized on exam as normal, and even that speculation must ignore that range of motion was characterized as "reduced." Finally, and importantly also, the ALJ did not explain and the court does not understand how "normal" strength, tone, and range of motion (even if it were normal) for a severely obese woman (BMI 40+, R. 659) is inconsistent with an ability to stand for only an hour at a time and a need for breaks every 30 minutes. Absent a cogent explanation for these ambiguities, the evidence cited precludes the ALJ's finding.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this opinion.

Dated March 27, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**